IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DELISE BROWN,

                Plaintiff,

vs.                            Case No. 11-4122-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On May 26, 2010, administrative law judge (ALJ) George M. Bock issued his decision (R. at 12-20). Plaintiff alleges that she has been disabled since September 30, 2007 (R. at 12). Plaintiff is insured for disability insurance benefits through September 30, 2007 (R. at 14). At step one, the ALJ found that

plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 14).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative joint disease of the cervical spine, and bipolar disorder with depression and anxiety (R. at 14).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15).  After determining plaintiff's RFC (R. at 15-16), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 18).  At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 18-19)  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III.  Did the ALJ err in his evaluation of the treatment notes and in his evaluation of the opinions of plaintiff's therapist?**

The record includes plaintiff's treatment records from Valeo Behavioral Health Care Center (R. at 379-497).  The ALJ summarized those treatment notes as follows:

> Underlying treatment notes describe bipolar and anxiety disorders with global assessment scores mainly in the 50s and 60s, representing a moderate to mild impairment in functioning which has responded to treatment, which has included medication and counseling.  For instance, a December 2009 note gave claimant a global assessment of functioning score of 55, representing a moderate impairment in functioning, noting that she needed to continue to monitor her

5

> medication in order to maintain the global
> assessment of functioning score (Ex. 12F/2).
> A January 2009 note gave claimant a global
> assessment score of 63, representing a mild
> impairment in functioning (Ex. 12F/14).

(R. at 17). The problem with the two GAF scores identified by the ALJ is that the treatment notes indicate on both dates (November 30, 2009 [not December 2009, as indicated by the ALJ] and January 14, 2009) that plaintiff did not show for the appointments scheduled for either date (R. at 381-380, 391-392).

The treatment notes on May 23, 2008 show a GAF score of 65, and the notes from July 18, 2008 show a GAF score of 45. Plaintiff then attended eleven appointments from August 12, 2008 through December 8, 2008 (the records also indicate nine no-shows or cancellations from August 2008 through February 2009) (R. at 388-454). The GAF scores from the appointments at which plaintiff was present were as follows:

| | |
|---|---|
| Aug. 12, 2008: | 55 |
| 9 appointments from Aug. 15, 2008-Oct. 24, 2008: | 58 |
| Dec. 8, 2008: | 62 |

(R. at 395-429). The next treatment notes begin in November 2009. They show as follows:

| | |
|---|---|
| Nov. 4, 2009: | 62 |
| Nov. 10, 2009 & Nov. 17, 2009: | 55 |
| 5 appointments from Dec. 2, 2009-Feb. 3, 2010: | 40 |

6

(R. at 380-387, 472-490).[1]  Thus, the treatment records indicate that plaintiff's GAF from May through December 2008 was in the 50s and 60s (with the exception of July 18, 2008, which showed a GAF of 45).  Her scores in November 2009 were also in the 50s and 60s, but then her scores from December 2009 through February 2010 fell to a GAF of 40.  Thus, although the ALJ acknowledged that her scores began in the 50s and 60s, the ALJ failed to note that they fell to a GAF of 40 in late 2009 and early 2010.

On February 11, 2010, plaintiff's therapist stated as follows:

> …Ms. Brown receives case management services, therapy and medication services at

---

[1] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders.  The scores in this case represent the following:

> 61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **some difficulty in social, occupational, or school functioning...but generally functioning pretty well, has some meaningful interpersonal relationships**.
>
> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks**) OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).
>
> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting**), OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) .
>
> 31-40: **Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work....).

<u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.  A claimant's impairment might lie solely with the social, rather than the occupational sphere.  A GAF score of fifty or less, however, does suggest an inability to keep a job.  For this reason, such a GAF score should not be ignored.  <u>Lee v. Barnhart</u>, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).

> Valeo.  She is currently prescribed Abilify to help her manage symptoms of Bipolar Disorder.  **Ms. Brown has concerns about anger management and would currently have difficulty focusing sufficiently to maintain competitive employment.**

(R. at 498, emphasis added).  The ALJ stated the following about the above statement from plaintiff's therapist:

> In making this determination the undersigned has considered the treating therapist statement at ex. 14F that suggests that claimant is disabled by stating claimant "has concerns about anger management and would currently have difficulty focusing sufficiently to maintain employment." However, the undersigned cannot give great weight to this opinion as it is not consistent with underlying treatment notes or mental status evaluations and global assessment of functioning scores showing that claimant is functioning adequately and is able to perform work within the above residual capacity assessment so long as she takes her medication.

(R. at 17).

The ALJ thus discounted the therapist's opinions because they were allegedly inconsistent with the GAF scores and the treatment notes.  However, these findings by the ALJ are not supported by the treatment records from the last three months before the therapist gave his opinion.  First, the therapist's statement was dated February 11, 2010, after 5 consecutive treatment notes (December 2, 2009-February 3, 2010) showing a GAF of 40.  As noted above, a GAF score of 40 indicates some impairment in reality testing or communication or a major

8

impairment in several areas, such as work, family relations, judgment, thinking, or mood.  Thus, the five GAF scores immediately preceding the therapist's statement do not appear to be inconsistent with the therapist's opinion.  The ALJ failed to mention the five consecutive GAF scores of 40 preceding the statement by the therapist.

Second, the ALJ asserted that the therapist's opinions were not consistent with the underlying treatment notes.  However, the treatment notes from December 2, 2009-February 3, 2010 include the following:

> December 2, 2009
>
> Cognition: Oriented, Distractible, Impaired Memory (R. at 490)
>
> January 14, 2010
>
> Presenting Problems: Anxiety and past trauma causes barriers when trying to focus, concentrate, and starting and completing tasks of daily living.  It can also lead to depression, and feeling of giving up which leads to the use of drugs again. …
>
> Assessment: Need to monitor meds, mood disorder, to maintain GAF, impairment in social, familial (R. at 484)
>
> January 25, 2010
>
> Presenting Problems: depressed, anxious, irritable, difficulty doing work, feeling overwhelmed (R. at 480)
>
> February 3, 2010

> Presenting Problems: depressed, anxious, angry, irritable, stressed, racing thoughts, difficulty accomplishing chores, feeling overwhelmed (R. at 472)

On February 11, 2010, the therapist stated that plaintiff had difficulty focusing sufficiently to maintain competitive employment (R. at 498). The treatment notes for the three months preceding this opinion specifically note barriers to focusing, concentrating and starting and completing tasks of daily living, difficulty doing work, racing thoughts, difficulty accomplishing chores and feeling overwhelmed. Thus, the treatment notes from December 2009-February 2010 appear to be consistent with the opinions expressed by the therapist on February 11, 2010. However, the ALJ in his summary of the treatment notes made absolutely no reference to the treatment notes or GAF scores of 40 from December 2009-February 2010.

It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position, while ignoring other evidence. Carpenter v. Astrue, 537 F.3d 1264, 1265 (10th Cir. 2008); Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004). The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely

10

upon, as well as significantly probative evidence that he rejects. Clifton v. Chater, 70 F.3d 1007, 1009-1010 (10th Cir. 1996); see Carpenter, 537 F.3d at 1266. Given the fact that the opinions of the therapist appear to be consistent with the treatment notes in the three months before the therapist offered his opinion, and the fact that the ALJ failed to mention any of those treatment notes, the court finds that substantial evidence does not support the ALJ's finding that the opinions of the therapist were not consistent with the treatment notes or GAF scores. An ALJ cannot ignore three months of treatment notes immediately preceding an opinion from a treating therapist when those notes are consistent with the therapist's opinions. Therefore, this case shall be remanded in order for the ALJ to consider the treatment notes from December 2009-February 2010, and to evaluate the opinions of the therapist after taking all the treatment notes into consideration.

**IV. Other issues raised by the plaintiff**

Plaintiff also asserts error by the ALJ as to the weight accorded to the opinions of a lay witness and the ALJ's PRTF (psychiatric review technique form) findings. The court will not discuss these issues in detail because they may be affected by the ALJ's resolution of the case on remand after considering the opinions expressed by the therapist in light of all the treatment notes, including those in the three months immediately

preceding the report from the therapist.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

However, regarding the weight accorded to the opinions of the lay witness, as a general rule, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  In regards to the PRTF findings of the ALJ (R. at 15), they appear to be consistent with the PRTF findings of Dr. Blum, a non-examining medical source (R. at 365, 375).  Furthermore, the ALJ's mental RFC findings (R. at 16) appear to reflect the limitations set out in the mental RFC findings by Dr. Blum (R. at 330-332).  However, the ALJ never mentioned the opinions of Dr. Blum in his opinion.  On remand, the ALJ should address the opinions of Dr. Blum, and set forth what weight he is according to Dr. Blum's opinions in his decision.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 21st day of November 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge